UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AXIS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22-mc-15 |
| | ) | |
| v. | ) | (Underlying Litigation |
| | ) | Civil Case No.: 1:19-cv-00165-DRL-SLC |
| AMERICAN SPECIALTY INSURANCE | ) | United States District Court, |
| & RISK SERVICES, INC. | ) | Northern District of Indiana) |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF AXIS INSURANCE COMPANY'S MOTION TO COMPEL
NON-PARTY BROWN & BROWN INC. TO COMPLY WITH SUBPOENA**

This miscellaneous action concerns plaintiff AXIS Insurance Company's ("AXIS") effort to enforce a non-party subpoena in a suit it is pursuing against a subsidiary of defendant Brown & Brown, Inc. ("Brown & Brown"), in the Northern District of Indiana ("Indemnity Action").[1] Specifically, AXIS is suing American Specialty Insurance and Risk Services, Inc. ("American Specialty") in the Indemnity Action for its breaches of its agreement with AXIS to promote, underwrite, bind, and deliver AXIS's insurance policies to customers and handle claims under those policies. One of those customers—the Tampa Bay Buccaneers ("Buccaneers")—purchased a general liability policy and an excess liability policy in 2013 through its broker. But when American Specialty underwrote, bound, and delivered those policies to the Buccaneers, it did so incorrectly and contrary to its contractual obligations to AXIS. Among other things, American Specialty offered excess coverage that it did not have authority to bind, and then it delivered an excess policy that failed to provide the coverage it offered.

---

[1]    The cause number of that action is 1:19-cv-00165.

American Specialty compounded its errors in 2015, when the Buccaneers' former placekicker asserted a claim against the Buccaneers that was likely to exhaust the team's primary policy and potentially would have required AXIS to pay the full limits of the excess policy. When American Specialty received notice of the claim, it acted contrary to AXIS's interests and the parties' agreements. Initially, it sided with the Buccaneers and asked AXIS to provide the team coverage for the claim even though the excess policy did not provide that coverage. Later, Brown & Brown, on American Specialty's behalf, flip-flopped and told the Buccaneers' broker that AXIS should not have afforded the Buccaneers coverage for the claim under the policy. And ultimately, when the Buccaneers and AXIS requested American Specialty's attendance at a court-ordered mediation to try to resolve the claim, American Specialty abandoned both, leaving AXIS to clean up American Specialty's mess. After settling the claim, AXIS filed the Indemnity Action to recover the damages caused by American Specialty's breaches.

In the Indemnity Action, AXIS has subpoenaed straightforward discovery from Brown & Brown that is central to AXIS's claims—namely, the documents and communications that Brown & Brown exchanged internally and with third parties that relate to the insurance policies American Specialty underwrote for the Buccaneers in 2013 and the 2015 claim under those policies. Other discovery in the Indemnity Action confirms Brown & Brown has documents responsive to this subpoena, and Brown & Brown has asserted no specific objections to justify its refusal to produce them. But, despite numerous meet-and-confer efforts, Brown & Brown has improperly stonewalled this discovery.

AXIS encountered similar discovery obfuscation and obstruction from American Specialty.[2] And in July 2021, the Northern District of Indiana granted AXIS's motion to compel

---

[2]   To date, the same counsel have represented both American Specialty and Brown & Brown in this dispute.

additional discovery from American Specialty, finding that there was "little to suggest that American Specialty's position [refusing AXIS's discovery] was substantially justified." *See* Declaration of Stephanie Gutwein ("Gutwein Decl."), **Exhibit 1** at 24. However, the court concluded that it did not have jurisdiction over enforcement of AXIS's subpoena to Brown & Brown because "the district where compliance is required is the Southern District of Indiana." *Id.* at 22. Accordingly, AXIS now moves this Court for an order compelling Brown & Brown to respond fully to all of AXIS's discovery and to pay AXIS's fees in pursuing this motion.

## I.   Relevant Facts and Procedural History

### A. The Underlying Dispute

#### 1.   The Parties' Agreements

Under a written Program Manager Agreement ("PMA"), American Specialty served as AXIS's Managing General Agent from 2008 through at least 2013. Gutwein Decl., **Exhibit 2**, ¶¶ 20, 58; *see also, e.g.*, Indemnity Action ECF No. 123-4 (PMA).[3] In that role, American Specialty quoted, underwrote, and issued insurance policies for AXIS to professional sports organizations. Gutwein Decl., Ex. 2, ¶¶ 21-22. American Specialty also serviced claims under the policies that it issued. *Id.*, ¶¶ 23-25.

#### 2.   American Specialty proposes, binds, and quotes policies for the Buccaneers.

In 2013, American Specialty proposed, bound, and issued two insurance policies to the Tampa Bay Buccaneers, a general liability policy ("GL Policy") and an excess insurance policy ("Excess Policy"), through the team's broker, Marsh USA ("Marsh"). *See, e.g.*, *id.*, ¶¶ 58, 76. In

---

[3]   To avoid unnecessarily burdening the docket, AXIS has tried to be selective as to which documents, previously filed in the Indemnity Action, it is re-filing here, and is not submitting with this motion certain filings it references from the Indemnity Action that further support these background facts. However, should the Court believe it would be helpful to have any or all of these documents filed directly in this action, AXIS is willing to do so.

both the proposal and the binder for the Excess Policy that American Specialty issued to the Buccaneers, the Schedule of Controlling Underlying Insurance states that the primary layer employers liability policy is "TBD." *See* Gutwein Decl., **Exhibit 3**, ¶¶ 78, 85; *see also, e.g.*, Indemnity Action ECF No. 152-1 at Nos. 5 & 8; Indemnity Action ECF No. 152-2 at 4; Indemnity Action 152-3 at 4. However, the Schedule of Controlling Underlying Insurance in the Excess Policy that American Specialty issued to the Buccaneers lists the primary layer employers liability policy as "N/A." Gutwein Decl., Ex. 3, ¶ 91; *see also, e.g.*, Indemnity Action ECF No.152-1 at No. 6; Indemnity Action 152-4 at 8.

### 3.  The Tynes Claim

In March 2015, the Buccaneers' former placekicker, Lawrence Tynes, asserted a claim against the Buccaneers associated with an illness that he alleged he contracted at a Buccaneers facility in 2013 ("Tynes Claim"). *See, e.g.*, Gutwein Decl., Ex. 2, ¶¶ 94-97. American Specialty notified AXIS of the Tynes Claim on March 5, 2015. *See, e.g.*, *id.*, ¶ 99.

### 4.  The Coverage and Indemnity Disputes

After AXIS denied the Buccaneers coverage for the Tynes Claim under the GL and Excess Policies on March 24, 2015, Marsh contacted American Specialty to ask why the Excess Policy did not reflect the excess employers liability coverage reflected in the Excess Policy binder American Specialty had issued.  *See, e.g.*, *id.*, ¶ 103; Indemnity Action, ECF No. 75-14. Thereafter, American Specialty twice represented to AXIS that it had mistakenly issued the Excess Policy without scheduling the Buccaneers' underlying employers liability insurance and requested that AXIS endorse or reform the policy to provide that coverage. *See* Gutwein Decl., Ex. 3, ¶¶ 105, 109-10; *see also, e.g.*, Indemnity Action ECF No. 152-1 at Nos. 10 & 11, Indemnity Action ECF No. 152-5 at 1; Indemnity Action ECF No. 152-6; *see also* Indemnity

Action ECF No. 75-9 (showing Rickard was American Specialty underwriter on GL Policy and Excess Policy).

AXIS, through outside counsel, advised American Specialty that it had no authority to issue excess employers liability coverage to the Buccaneers in 2013 without AXIS's approval, which it never obtained, and that AXIS would not be retroactively endorsing or reforming the Excess Policy as American Specialty had requested. *See* Gutwein Decl., Ex. 3, ¶¶ 106-08, 111. AXIS also demanded that American Specialty indemnify it for any loss it might suffer in connection with American Specialty's error in underwriting the Excess Policy. *See, e.g.*, *id.*, ¶ 112; Indemnity Action ECF No. 152-7 at 3.

### 5. The Tynes Litigation

After the Buccaneers noticed the Tynes Claim, Tynes filed a lawsuit against the Buccaneers and the owner of the practice facility and sought over $20 million in damages ("Tynes Litigation"). *See, e.g.*, Gutwein Decl., Ex. 2, ¶ 115. The parties litigated that action throughout 2015 and 2016. *See, e.g.*, *id.*, ¶ 116.

In September and October 2016, the Buccaneers advised AXIS and American Specialty that the Buccaneers expected any settlement of, or judgment on, the Tynes Claim to exhaust the team's primary employers liability policy, demanded that AXIS reform the Excess Policy to provide for excess employers liability coverage, and requested that AXIS and American Specialty participate in court-ordered mediation in the Tynes Litigation. *See id.*, ¶¶ 118-19; *see also, e.g.*, Indemnity Action ECF No. 75-10 (Sept. 2016 letter); Indemnity Action ECF No. 152-8 at 1 (Oct. 2016 letter). In November 2016, AXIS advised that it would not reform the Excess Policy and separately requested to meet with American Specialty and Marsh to discuss whether

there was a pathway to informally resolving the Tynes Claim. *See* Gutwein Decl., Ex. 2, ¶¶ 120-21; *see also* Indemnity Action ECF No. 152-9.

Marsh refused AXIS's meeting request, asserted that American Specialty and the Buccaneers had always intended the Excess Policy to provide excess employers liability coverage, and insisted that AXIS reform the Excess Policy to provide that coverage. *See* Gutwein Decl., Ex. 3, ¶ 122; *id.*, **Exhibit 4**. American Specialty did not respond to AXIS. *See id.*, Ex. 3, ¶ 123. However, on December 12, 2016, Brown & Brown responded to Marsh's letter on American Specialty's behalf, for the first time taking a position directly contrary to American Specialty's earlier representations to AXIS:  that American Specialty had never intended to schedule employers liability coverage on the Excess Policy. *See id.*, **Exhibit 5**. Marsh and Brown & Brown exchanged at least two additional written communications on these issues. *See id.*, **Exhibits 6** & **7**.

In December 2016, AXIS participated in the court-ordered mediation in the Tynes Litigation; American Specialty did not. *See, e.g.*, *id.*, Ex. 2, ¶ 125. Ultimately, AXIS contributed to a confidential settlement of the Tynes Claim ("Tynes Settlement"). *See, e.g.*, *id.*, Ex. 3, ¶ 126.

**6.  AXIS seeks redress from American Specialty for the Coverage Dispute.**

In accordance with the PMA, AXIS demanded that American Specialty indemnify it for the mistakes it made as to the Excess Policy, which caused AXIS to incur losses in connection with the Tynes Claim. *See, e.g.*, *id.*, Ex. 2, ¶ 112; Indemnity Action ECF No. 123-4 at 30-31. American Specialty so far has refused to honor that contractual obligation.

**B.  The Indemnity Action**

AXIS filed the Indemnity Action on April 16, 2019 and filed its second amended complaint on August 19, 2019. *See* Gutwein Decl., Ex. 3. It asserts that American Specialty

breached the PMA in its botched underwriting of the Excess Policy and its mishandling of the Tynes Claim. *See id.*, ¶¶ 20-138. American Specialty answered and denied liability in November 2019. *See id.*, Ex. 2.

### C. AXIS's relevant discovery efforts in the Indemnity Action

#### 1. AXIS seeks discovery from American Specialty.

AXIS and American Specialty began conducting written discovery in October 2019. *See, e.g., id.*, Ex. 1 at 2. Beginning in early 2020 through February 2021, AXIS engaged in numerous Rule 26(f) meet-and-confer efforts, both telephonically and in writing, regarding American Specialty's deficient responses to AXIS's discovery requests. *See, e.g., id.* at 2-5.[4]

#### 2. AXIS subpoenas Brown & Brown.

AXIS served a non-party subpoena on Brown & Brown on May 21, 2020. *See, e.g.*, Gutwein Decl., **Exhibit 10** ("Subpoena"); *see also id.*, Ex. 1 at 3. Two weeks later, American Specialty's counsel notified AXIS that they also would be representing Brown & Brown in responding to the Subpoena and served a short letter objecting to the Subpoena in its entirety. *See id.*, **Exhibit 11**; *see also id.*, Ex. 1 at 3.

#### 3. AXIS repeatedly attempts to resolve the dispute over the Subpoena.

AXIS responded to Brown & Brown's objection letter on July 10, 2020, explained why Brown & Brown's objections were meritless, and requested an opportunity to meet and confer to resolve Brown & Brown's concerns. *See id.*, **Exhibit 12**; *see also id.*, Ex. 1 at 3.

---

[4] Because this motion is focused on obtaining the subpoenaed discovery from Brown & Brown, AXIS has not detailed the considerable discovery efforts it has undertaken in the Indemnity Action as to American Specialty. However, AXIS extensively summarized those efforts in its briefing in support of its motion to compel in the Indemnity Action, should the Court desire more information on them. *See* Gutwein Decl., **Exhibits 8** & **9**.

The parties' counsel met and conferred about Brown & Brown's refusal to respond to the Subpoena during July 24 and July 31, 2020 phone calls. *See, e.g.*, *id.*, Ex. 1 at 3; *see also id.*, **Exhibit 13** at 1, 7-8. During the first call, Brown & Brown's counsel expressed that Brown & Brown viewed itself as American Specialty's in-house counsel, but they did not know whether American Specialty had collected, reviewed, and produced all of Brown & Brown's documents responsive to the Subpoena. *See id.*, Ex. 13 at 7. Brown & Brown's counsel also requested that AXIS agree to a cut-off date for Brown & Brown's privilege log. *See id.* During the second call, Brown & Brown's counsel represented that American Specialty had copies of some of the same documents as Brown & Brown, such that, in Brown & Brown's view, American Specialty's production to date had already included some of the documents responsive to the Subpoena. *See id.* Brown & Brown's counsel still did not confirm whether Brown & Brown had actually undertaken to collect and produce its documents responsive to the Subpoena, and AXIS's counsel requested that Brown & Brown immediately do so. *See id.* Days later, on August 3, 2020, AXIS reiterated in writing its request that Brown & Brown produce its non-privileged documents responsive to the Subpoena and propose a cut-off date for logging its privileged or protected documents. *See id.*, **Exhibit 14** at 1; *see also id.*, Ex. 13 at 7-8.

Brown & Brown failed to respond to AXIS's August 3, 2020 communication and to otherwise respond to the Subpoena, so AXIS sent another Rule 26(f) letter to American Specialty and Brown & Brown on August 18, 2020 ("August Letter"). *See id.*, Ex. 13; *see also id.*, Ex. 1 at 4. In that letter, AXIS renewed its request that Brown & Brown confirm whether it had collected and produced all of its records responsive to the Subpoena that were neither privileged nor protected and, if not, that it do so. *See id.*, Ex. 13 at 7-8, § II. When Brown & Brown did not respond to that communication, AXIS sent another email on September 5, 2020 to American

Specialty and Brown & Brown advising that it would be asking the Court for an informal

discovery conference. *See id.*, **Exhibit 15** at 2-3.

### 4. AXIS requests a discovery conference with the court.

On September 9, 2020, AXIS requested a telephonic status conference with the court to

discuss the parties' discovery dispute. *See* Indemnity Action ECF No. 63. The court granted

AXIS's request and scheduled a telephonic status conference for September 30, 2020. *See*

Indemnity Action ECF No. 64.

### 5. Brown & Brown first responds to AXIS's Rule 26(f) letters.

For the first time, on September 29, 2020, American Specialty and Brown & Brown

served a written response to AXIS's Rule 26(f) letter. *See* Gutwein Decl., **Exhibit 16**. The letter

did not address whether Brown & Brown had searched for, collected, and produced all non-

privileged and protected documents responsive to the Subpoena. Instead, it advised only that

"Brown & Brown, Inc. has provided all non-privileged responsive documents received as part of

American Specialty's document productions," and offered only that the parties again "meet and

confer to discuss an agreed upon cut-off date for when privileged communications must be

logged." *Id.*, Ex. 16 at 3.

### 6. The Court holds a discovery conference.

During the September 30, 2020 telephonic status conference, the Court encouraged the

parties to resolve their discovery issues but authorized AXIS to file a motion to compel if they

remained unresolved. *See* Indemnity Action ECF No. 65.

### 7. American Specialty's documents confirm the discovery deficiencies.

On January 8, 2021, American Specialty produced an additional 44 documents ("Second

Production"), which further underscored the deficiencies with American Specialty's and Brown

& Brown's discovery responses. *See* Gutwein Decl., **Exhibit 17** at 3. Among other things, and as

relevant here, the Second Production contained what appear to be the Excess Claim notes (also known as the "claim diary").[5] *See id.*, Ex. 17 at 4. Here is a snapshot of the top portion of that document:

*Id.*, Ex. 18. The Excess Claim notes also reflect the existence of a Brown & Brown Claim File, which neither American Specialty nor Brown & Brown has produced. *See id.*, Ex. 17 at 5, *id.*, Ex. 18.

### 8.  AXIS's additional meet-and-confer efforts are unavailing.

Based on this additional information, AXIS sent another letter to American Specialty and Brown & Brown regarding the discovery deficiencies on January 13, 2021. *Id.*, Ex. 17. As relevant here, AXIS reiterated its request that American Specialty and Brown & Brown immediately confirm that they had produced all of Brown & Brown's non-privileged or

---

[5]   American Specialty had previously misrepresented that the Excess Claim notes either (a) were in its first production of documents with the purported Claim File, or (b) did not exist. *See id.*, Ex. 17 at 3-4. Worse still, the Excess Claim notes are date-stamped November 24, 2020—apparently indicating that American Specialty had printed them nearly two months earlier and waited to produce them until AXIS had already deposed two American Specialty witnesses in December 2020 and two business days before AXIS was scheduled to depose a third American Specialty employee. *See id.*, **Exhibit 18**.

protected documents responsive to the Subpoena and, if not, immediately produce all documents that Brown & Brown was improperly withholding, along with a privilege log. *See id.* at 5.

By letter dated February 2, 2021, American Specialty and Brown & Brown again refused to confirm whether Brown & Brown had collected, reviewed, and produced all non-privileged or protected responsive documents and instead only repeated the same representation that they had made previously:  that "Brown & Brown, Inc. ha[d] provided all non-privileged responsive documents received as part of American Specialty's document productions." *Id.*, **Exhibit 19** at 3.[6] AXIS understands Brown & Brown's representation to convey that Brown & Brown has never, in fact, searched for, collected, and produced all of its non-privileged or protected documents responsive to the Subpoena.

### D.  AXIS's Motion to Compel in the Indemnity Action

On February 12, 2021, AXIS moved to compel discovery from American Specialty and Brown & Brown. *See id.*, Exs. 8 & 9. In its opposition to that motion, American Specialty disclaimed that it had responded to the Subpoena on Brown & Brown's behalf, and Brown & Brown seemingly confirmed that it had not responded to the Subpoena *at all*. *See id.*, **Exhibit 20** at 22-24. Instead, it appeared to stand on its blanket objections to the Subpoena. *Id.*

In April 2021, while AXIS's motion was pending, AXIS and American Specialty (whose counsel also represents Brown & Brown in this dispute) agreed to a privilege log cut-off date of April 25, 2017. *See id.*, **Exhibit 21**, § 2.a. Despite having reached this agreement, and AXIS and American Specialty's having exchanged privilege logs in June 2021, Brown & Brown has served no privilege log in the Indemnity Action. *See id.*, ¶ 4, **Exhibit 22**.

---

[6]   Brown & Brown also proposed yet another meet-and-confer to discuss a cut-off date for logging privileged documents, though it never proposed any specific date or attempted to arrange any meet-and-confer. *Id.*

In July 2021, the Northern District of Indiana granted AXIS's motion as to the discovery it sought from American Specialty and presumptively awarded AXIS the fees it had incurred pursuing that discovery. *See id.*, Ex. 1 at 26. In particular, the Court required American Specialty to: (a) produce to AXIS all responsive, non-privileged documents and material not previously produced, along with accompanying metadata; (b) file one or more affidavits "detailing its search for, and collection of, responsive material"; and (c) produce a privilege log containing seven categories of information for each document it withheld under claim of privilege or protection. *Id.* However, the Court concluded it did not have jurisdiction to enforce the Subpoena and so denied that aspect of AXIS's motion without prejudice. *See id.*

Consistent with that Order, AXIS now seeks to enforce the Subpoena in this district.

## II.   **Legal Standard**

The scope of discovery available under Rule 45 is co-extensive with the scope of discovery available under Rule 26(b)(1). *See, e.g.*, *Barnhouse v. City of Muncie*, No. 1:19-CV-00958-TWP-DLP, 2020 WL 9349545, at *4 (S.D. Ind. July 7, 2020), *reconsideration denied*, 2020 WL 9349544 (S.D. Ind. Sept. 11, 2020); *see also* Fed. R. Civ. P. 26(b)(1) (authorizing a party to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). "Consequently, if material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of subpoena." *Jackson v. Brinker*, 147 F.R.D. 189, 194 (S.D. Ind. 1993).

The party seeking to enforce a subpoena may move for an order compelling compliance under Rule 45(d)(2)(B)(i). The objecting party then "bears the burden of establishing its objections." *Kyner v. Loveridge*, No. 2:17-CV-00373-JPH-MJD, 2019 WL 1778663, at *1 (S.D. Ind. Apr. 23, 2019).

## III.    Argument

Brown & Brown has shirked its obligation to respond to the Subpoena, which plainly seeks information relevant to the Indemnity Action. Though Brown & Brown represented during the meet-and-confer process that it "ha[d] provided all non-privileged responsive documents received as part of American Specialty's document productions," it clarified in response to AXIS's motion to compel that, in fact, American Specialty did not produce any documents on Brown & Brown's behalf. *Compare* Gutwein Decl., Ex. 19 at 3, *with id.*, Ex. 20 at 22. Instead, at most, Brown & Brown appears to be contending that it may avoid the Subpoena based on only its blanket objections and its unsupported representation American Specialty has already produced some of the same documents that Brown & Brown would produce in response to the Subpoena. *Id.*, Ex. 20 at 23-24. Neither argument holds water. Brown & Brown's repeated representation that it would produce a privilege log "as soon as the parties agree on a cut-off date for when privileged communications must be logged" also rings hollow because AXIS and American Specialty agreed to a cut-off date for logging documents nearly a year ago, and still Brown & Brown has produced no privilege log.

AXIS thus seeks an order compelling Brown & Brown to fully respond to the Subpoena and to pay the expenses AXIS has incurred in pursuing this motion.

### A. Brown & Brown has relevant, responsive documents.

The Subpoena unquestionably seeks information relevant to the Indemnity Action, and Brown & Brown indisputably has documents responsive to it.

First, Subpoena Request Nos. 1, 2, 3, 4, and 6 seek Brown & Brown's documents that concern the GL Policy and the Excess Policy, American Specialty's underwriting of those policies, and communications with specified third parties about those policies. *See id.*, Ex. 10 at 7-8. Subpoena Request Nos. 5 and 7 seek Brown & Brown's documents that concern Tynes, the Tynes Claim, the Tynes Litigation, and the Tynes Settlement. *See id.* at 8. And Subpoena Request Nos. 8, 9, 10, and 11 seek Brown & Brown's documents that relate to the letters that it exchanged with Marsh in December 2016. *See id.* at 8-9. Each request thus seeks documents that relate squarely to the parties' dispute in the Indemnity Action. *See, e.g.*, *supra* at 3-6.

Second, documents American Specialty has produced in the Indemnity Action establish that Brown & Brown has documents responsive to these requests. For example, the Excess Claim notes that American Specialty produced on January 8, 2021 confirm that Brown & Brown maintained a claim file in connection with the Tynes Claim:

| Date | Entered By | Category | Subject | Note |
|------|-----------|----------|---------|------|
| 2/8/2019 | MJTHOMPS | Not Specified | None | MJTHOMPS CHANGED RESERVE BY <$10,000.00> TO $.00 |
| 2/8/2019 | MJTHOMPS | Not Specified | None | File Close Reason - Close |
| 2/7/2019 | MJTHOMPS | Coverage Issue | No activity | Still no activity. Brown & Brown has closed its file. Should we do so as well? |

Gutwein Decl., Ex. 18 at 2. Brown & Brown's communications with Marsh on behalf of American Specialty regarding whether American Specialty intended to underwrite excess employers liability coverage for the Buccaneers in the Excess Policy and whether that policy should be reformed further support that Brown & Brown has documents related to the GL Policy, the Excess Policy, and the Tynes Claim. *See, e.g.*, *id.*, Exs. 4-7. And American Specialty's privilege log also reflects that non-attorney American Specialty and Brown & Brown employees were communicating about the parties' dispute throughout 2015 and 2016. *See, e.g.*, *id.*, Ex. 22.

The Subpoena thus seeks Brown & Brown records that are directly relevant to the parties' dispute in the Indemnity Action.

**B. Brown & Brown's blanket objections are improper.**

Brown & Brown may not avoid relevant discovery with boilerplate overbreadth, undue

burden, and privilege and work-product objections. *See id.*, Ex. 11 at 2-3. Brown & Brown bears

the burden of showing, "with specificity," why AXIS's discovery is objectionable. *McGrath v.*

*Everest Nat. Ins. Co.*, No. 2:07 CV 34, 2009 WL 1325405, at *3 (N.D. Ind. May 13, 2009),

*amended*, 2009 WL 2508216 (N.D. Ind. Aug. 13, 2009). Brown & Brown's "reflexive invocation

of the same baseless, often abused litany that the requested discovery is vague, ambiguous,

overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to

the discovery of admissible evidence" fails to satisfy this standard. *Id.*; *see also, e.g.*, *Jensen v.*

*Indianapolis Pub. Sch.*, No. 1:16-CV-02047-TWP-DLP, 2019 WL 2106602, at *1 (S.D. Ind.

May 14, 2019) ("General objections to [the Subpoena] that merely recite boilerplate language

without explanation do not meet" "the burden to show the discovery requests are improper and to

explain *precisely* why its objections are proper," and "courts within the Seventh Circuit

consistently overrule them or entirely disregard such objections."); *Castelino v. Rose-Hulman*

*Inst. of Tech.*, No. 2:17-CV-00139-WTL-MJD, 2018 WL 4519397, at *3 (S.D. Ind. Mar. 28,

2018) ("General assertions of hardship and burden are not sufficient to justify the failure to

produce documents [in response to a subpoena]. A party objecting to discovery on the basis of

undue burden must specifically demonstrate the burden that the discovery would impose.");

*McKinney v. ICON Transp. Co.*, No. 4:04-cv-81, 2005 WL 8178477, at *2 (N.D. Ind. Aug. 9,

2005) (confirming party objecting to subpoena bears burden of showing with specificity that

discovery is improper); *F.T.C. v. Trudeau*, No. 03 C 3904, 2013 WL 842599, at *4 (N.D. Ill.

Mar. 6, 2013) (rejecting "boilerplate objections" to subpoena, including for overbreadth).

Moreover, to the extent Brown & Brown is withholding documents under a blanket claim of privilege or work-product protection, those objections fail because American Specialty was obligated to support them with a privilege log, and it did not. *See, e.g.*, *Castelino*, 2018 WL 4519397 at *3 (confirming that subpoena recipient "must assert privilege objections specific to each responsive document and describe the nature of the withheld documents in a privilege log"); *Laun v. Laun*, No. 1:06-CV-246, 2007 WL 178607, at *2 (N.D. Ind. Jan. 19, 2007) (denying motion to quash subpoena and granting motion to compel response because recipient's "blanket claim of an attorney-client privilege is improper" and "claims of privilege must instead be made and sustained on a document-by-document or question-by-question basis").

Because Brown & Brown's undue burden, overbreadth, and relevance objections to the Subpoena are nonspecific boilerplate, and it failed to support its privilege and work-product objections on a document-by-document basis, it has waived them. *See, e.g.*, *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (noting that Rule 45 requires non-parties "to raise all objections at once, rather than in staggered batches," and holding that failure to assert specific substantive objections within time required by Rule 45(c)(2)(B) results in waiver of objections); *Lymon v. UAW Loc. Union #2209*, No. 1:20-CV-000169-HAB-SLC, 2021 WL 5810332, at *1 (N.D. Ind. Dec. 7, 2021) (holding failure to raise timely objections to subpoena results in waiver); *Young v. City of Chicago*, No. 13 C 5651, 2017 WL 25170, at *6 (N.D. Ill. Jan. 3, 2017) (explaining that "[t]ogether, Rules 45 and 26(b)(5) give a party or subpoenaed nonparty responding to discovery a choice:  prepare an adequate privilege log or risk an order compelling disclosure of the allegedly privileged material"); *Mosley v. City of Chicago*, 252 F.R.D. 445, 448 (N.D. Ill. 2008) (holding subpoena respondents waived privilege claims by failing to comply

with Rule 45's requirement that they serve a privilege log). Accordingly, Brown & Brown should also be ordered to respond fully to AXIS's discovery.

### C.  Brown & Brown may not rely on American Specialty's production.

Brown & Brown's apparent argument that it can rely wholly on American Specialty's production to avoid its discovery obligations is also meritless. In the first instance, it is unclear how Brown & Brown can represent that American Specialty's production duplicates the documents it would produce in response to the Subpoena when it seemingly has refused to undertake even the effort of collecting and reviewing its responsive documents.[7] *See, e.g.*, Gutwein Decl., Ex. 11 at 1. Moreover, there is no evidence that American Specialty's discovery responses supplant or duplicate what Brown & Brown's would be. Rather, American Specialty has expressly disclaimed producing any documents on Brown & Brown's behalf. *See, e.g.*, *id.*, Ex. 20 at 22. And, in response to the Order granting AXIS's motion to compel American Specialty to supplement its discovery, American Specialty produced *no* communications with Brown & Brown that relate to the GL Policy, the Excess Policy, the Tynes Claim, or the Tynes Litigation. *See id.*, ¶ 5. Yet, as noted, documents American Specialty has produced in this action establish that Brown & Brown maintained its own claim file in connection with the Tynes Claim. So, assuming American Specialty complied fully with the order compelling it to supplement its discovery responses, "it is self-evident" that American Specialty is not in possession of Brown & Brown's files, records, and communications. *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 1:15-mc-00103-TWP-DML, 2016 WL 1627599, at *3 (S.D. Ind. Apr. 19, 2016). And

---

[7]   Conversely, if it *has* actually endeavored to search for, collect, and review its responsive documents, its undue burden objection—purportedly premised on "the cost of reviewing the files and complying with the requests"—seemingly would be inappropriate. *See, e.g.*, Ex. 11.

AXIS "is entitled to get information from the most reliable source possible—the original source," which, here, is Brown & Brown. *Id.*

### D. AXIS should be awarded its fees and costs in pursuing this discovery.

Finally, Brown & Brown should be ordered to pay the fees AXIS has incurred in pursuing this discovery. Rule 37(a)(5) requires the Court to award a party who prevails on a motion to compel its "reasonable expenses incurred in making the motion, including attorney's fees," unless the non-moving party shows that its position was substantially justified or other circumstances would make the award unjust. *See also, e.g.*, *McGrath*, 2009 WL 1325405 at *3; *Sprint Sols., Inc. v. iCell Guru, Inc.*, 310 F.R.D. 563, 569 (N.D. Ill. 2015). Neither exception applies here.

AXIS engaged in numerous meet-and-confers with Brown & Brown about its deficient response to the Subpoena. *See supra* at 7-12. Brown & Brown simply opted to ignore its obligations under the Rules, despite the undisputed evidence confirming that it has documents responsive to the Subpoena. As Brown & Brown has offered no legitimate objections to the Subpoena and has failed even to produce a privilege log, despite clear law requiring it to do so, its discovery conduct is not substantially justified, and no other circumstances render the Court's awarding AXIS its fees in pursuing this discovery unjust.

## CONCLUSION

Consistent with its discovery obligations Brown & Brown should be ordered to respond fully to the Subpoena and to pay the fees AXIS has incurred in pursuing this discovery.

Dated: February 25, 2022                          Respectfully submitted,


                                         By: */s/ Stephanie L. Gutwein*
                                         Ryan M. Hurley (#24956-49)
                                         Stephanie L. Gutwein (#31234-49)
                                         Emily A. Kile-Maxwell (#34666-49)
                                         FAEGRE DRINKER BIDDLE & REATH LLP
                                         300 North Meridian Street, Suite 2500
                                         Indianapolis, IN 46204
                                         (317) 237-0300
                                         Ryan.Hurley@faegredrinker.com
                                         Stephanie.Gutwein@faegredrinker.com
                                         Emily.KileMaxwell@faegredrinker.com


                                         *Attorneys for plaintiff AXIS Insurance Company*


## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on February 25, 2022, a copy of the foregoing was filed

electronically. Notice of this filing will be sent to all counsel of record by operation of the

Court's electronic filing system. Parties may access this filing through the Court's system.

Notice was sent to Brown & Brown Inc.'s counsel via email and U.S. Mail, postage pre-paid.


                                       */s/ Stephanie L. Gutwein*